## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| EDWIN WITHERSPOON, Jr., | § | |
| (Tarrant No. 0458991), | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No. 4:20-cv-313-O |
| | § | |
| BILL WAYBOURN, | § | |
| Sheriff, Tarrant County, Texas, et al., | § | |
| | § | |
| **Defendants.** | § | |

## <u>OPINION AND ORDER</u>

Now pending are remaining Defendant Tarrant County Sheriff Bill Waybourn's ("Waybourn") motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) with supporting brief (ECF No. 37), Plaintiff Edwin Horton Witherspoon's response (ECF No. 52), a document filed by Witherspoon (entitled "answer to Defendant's Motion to Dismiss") construed as a supplemental response (ECF No. 53), and Waybourn's reply (ECF No. 55).[1] Also pending before the Court are Witherspoon's motion for preliminary injunction (ECF No. 9), Waybourn's response (ECF No. 41) along with an extensive appendix (ECF Nos. 42-1 through 42-22), Witherspoon's reply (ECF No. 45), and a document construed as Witherspoon's supplemental reply (ECF No. 51).[2]

---

[1] Because Witherspoon filed multiple motions and other documents, the Court stayed this case and directed that no further document be filed without the party seeking leave. Order, ECF No. 57. Witherspoon then moved for leave to file an additional response to Waybourn's motion to dismiss (ECF No. 61). As Witherspoon has already filed a response and a supplemental response to Waybourn's motion to dismiss, the motion for leave (ECF No. 61) is **DENIED.** The previously issued stay is now lifted.

[2] Waybourn's response to the motion for preliminary injunction included an extensive appendix. Witherspoon sought an extension/leave to file a supplemental reply (ECF No. 48), and then submitted a document (ECF No. 51) entitled "Plaintiff's Answer to Defendant's Brief Against Preliminary Injunction,"

After considering Waybourn's motion to dismiss, Witherspoon's pleadings, his response and supplemental response, Waybourn's reply, and applicable law, the Court finds that Waybourn's motion to dismiss must be **GRANTED**. Furthermore, after considering Witherspoon's motion for preliminary injunction, Waybourn's response, Witherspoon's reply and supplemental reply, and applicable law, the Court finds that Witherspoon's motion for preliminary injunction must be **DENIED**.

## I.      BACKGROUND/PLEADINGS

Plaintiff Witherspoon, an inmate at the Tarrant County Jail, initiated this suit by filing a form civil complaint with attachment pages. Compl., ECF No. 1. Then, a few weeks later, he filed a handwritten amended complaint. Am. Compl., ECF No. 7. The Court then instructed Witherspoon to provide answers to a Questionnaire, which he did on July 8, 2020. Questionnaire Answers, ECF No. 15. Because Witherspoon is a prisoner proceeding pro se, the Court initially reviewed and screened these pleadings under authority of 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B).  By Order and Rule 54(b) Judgment entered on August  21, 2020, the Court denied Witherspoon's motion for a temporary restraining order, and dismissed the following claims and defendants under 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B) with prejudice: all claims against Taylor Williams, Officer Andress, Officer Ervin, and Lieutenant Renner; all claims for relief under the Occupational Safety and Health Act ("OSHA") and its implementing regulations; and all claims for relief under Texas Codes and under the Texas Administrative Code. Order 7-15, ECF No. 21; Rule 54(b) Judgment 1, ECF No. 22. The Court, however, authorized the issuance of process for Witherspoon's remaining claims of violation of a constitutional right under 42 U.S.C.

---

which the Court construes as a supplemental reply. Witherspoon's motion (ECF No. 48) is **GRANTED** to the extent the Court has reviewed and considered the supplemental reply (ECF No. 51).

§ 1983 against Waybourn. After the Court granted an extension, Waybourn appeared through the filing of the Rule 12(b)(6) motion and related briefing, and through the filing of the response and appendix to Witherspoon's motion for preliminary injunction. Those motions are addressed in turn.

## II.    WAYBOURN'S MOTION TO DISMISS

### A.    Rule 12(b)(6) Standard

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is generally viewed with disfavor. *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir.1997). The court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Bustos v. Martini Club Inc*, 599 F.3d 458, 461 (5th Cir. 2010) (citing *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009)). Rule 12 must be interpreted in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court and calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In determining whether to grant a motion to dismiss, the district court generally must not go outside the pleadings. *See Scanlan v. Texas A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Khurana v. Innovative Health Care Sys., Inc.*, 130 F.3d 143, 147 (5th Cir.1997); and *Capital Parks, Inc. v. Southeastern Adver. & Sales Sys., Inc*., 30 F.3d 627, 629 (5th Cir.1994)). Although the district court may not go outside the complaint, the Fifth Circuit has recognized one limited exception. *Scanlan*, 533 F.3d at 536 (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). In the *Collins* case, the Fifth Circuit approved the district court's consideration of documents attached to a motion to dismiss. In approving the district court's consideration of the documents attached to the motion to dismiss, the Fifth Circuit restricted such consideration to

3

documents that are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *Scanlan*, 343 F.3d at 536 (citing *Collins*, 224 F.3d at 498-99). Here, the Court has considered the documents attached to Witherspoon's pleadings.

A plaintiff must plead specific facts, not mere conclusory allegations, to avoid dismissal. *See Schultea v. Wood*, 47 F.3d 1427, 1431 (5th Cir. 1995) (en banc); *see also Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss") (citation omitted). Federal Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As the United States Supreme Court explained in *Bell Atlantic Corp. v. Twombly,* the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" and his "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. 544, 555 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), to the extent the Court concluded therein that a plaintiff can survive a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief"). Then, in *Ashcroft v. Iqbal,* the Supreme Court clarified that review of a Rule 12(b)(6) motion is guided by two principles: (1) a court must apply the presumption of truthfulness only to factual matters and not to legal conclusions; and (2) only a complaint that states a plausible claim for relief survives a motion to dismiss. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678-680. If the pleadings fail to meet the requirements of *Iqbal* and *Twombly*, no viable claim is stated and the pleadings are subject to dismissal.

4

### B.      Witherspoon's Pleading as to Sheriff Waybourn

Witherspoon's only specific reference to Waybourn is in response to the Court's questionnaire. Questionnaire Answers 8-9, ECF No. 15. Witherspoon indicates that he has "mentioned" Waybourn "due to his failure to act with respect to the claim." *Id.* Witherspoon, however, cites nothing that Waybourn has personally done or failed to do. *Id.* at 8-9. Rather, Witherspoon asserts that Waybourn is "the keeper of the jail and is responsible for the safekeeping of all prisoners committed to the [S]heriff[']s custody." *Id.* at 8. Witherspoon also alleges that Waybourn is Tarrant County's final policymaker in the area of law enforcement, but he makes no allegations that Waybourn promulgated an unconstitutional policy or was involved in the specific claims at issue. *Id.* at 9.

Instead, Witherspoon asserts that Waybourn failed to follow a March 13, 2020 Executive Order issued by Governor Greg Abbott ("Abbott Executive Order").[3] *Id.* at 8. Witherspoon also alleges that Waybourn did not adhere to "social distancing, P.P.E.s and the requirements of the Hazard Communication Act."[4] *Id.* at 9. He further alleges that "[t]he failure to carry out sanitation, P.P.E.'s, and requirements of Hazard Communication in essence denies the safekeeping of the prisoners[] in his custody or carrying out preventive and proactive measures in this pandemic." *Id.*

Although Witherspoon claims that Waybourn failed to follow an executive order, and otherwise failed to prevent or react to the COVID-19 pandemic, Witherspoon's pleadings demonstrate the opposite. Notably, Witherspoon attached a Tarrant County Sheriff's Office ("TCSO") Grievance Response to his answers, which stated that masks were mandated in the

---

[3] A copy of that Executive Order is included as an exhibit to Waybourn's response to Witherspoon's motion for a preliminary injunction. Waybourn's Resp. Exhibit 8, ECF No. 42-8.

[4] This Court has already dismissed Plaintiff's claims under the Occupational Health and Safety Act, which would include any such claims being asserted against Sheriff Waybourn. Order 12-13, ECF No. 21.

secure areas of the jail on April 15, 2020. This information was reiterated to Witherspoon on April 30 and May 28. *Id.* at 38, 40, 47 (Grievance Responses), ECF No. 15. Witherspoon was repeatedly told that he or his pod had been provided cleaning supplies. *Id.* at 21, 27, 134, 136, 144, 147, 150. He was reminded that "cleaning supplies are available upon request from the pod officers." *Id.* at 47.

Witherspoon also attached a copy of an April 27, 2020 memorandum from Captain E. Pedigo to all Tarrant County Jail Green Bay unit inmates, where Witherspoon was housed. Mot. Preliminary Inj. 7, ECF No. 9. In that memorandum, Captain Pedigo stated that inmates were provided two masks a week and directed all inmates to properly wear their medical masks over their mouth and nose or face discipline. *Id.* The memorandum stated that the mask "can help decrease the chance of someone spreading the Coronavirus" and "is for your protection." *Id.* The memorandum also instructed inmates to wash their hands for at least 20 seconds, to bathe, to maintain a clean tank and bunk, and to take every opportunity to clean. *Id.* The memorandum further advised all inmates to get adequate sleep to prevent the body from being worn down easily, and it instructed the inmates to drink water for hydration and filtration. *Id.* Finally, the memorandum directed the inmates to take fever-reducing medication and to allow medical staff to take their temperatures. *Id.*

Witherspoon does not plead how TCSO's conduct and precautionary measures fell below recommended guidance, other than to claim that TCSO failed to comply with the Abbott Executive Order. Questionnaire Answers 8, ECF No. 8. The Abbott Executive Order, however, did not outline any specific mandates for county jails to follow. Resp. Mot. Preliminary Inj. Exhibit 8, at 1-3, ECF No. 42-8. Instead, the Abbott Executive Order set out recommendations for social gatherings, restaurants, bars, gyms, food courts, massage parlors, nursing homes, long-term care

facilities, and schools. *Id.* The order provided that "[a]ll critical infrastructure will remain operational … and government entities … will continue providing essential services," which would include correctional facilities and jails. *Id.*

**C.    Analysis**

1.    No Liability Based on *Respondeat Superior*

Witherspoon appears to have named Waybourn because he "is the keeper of the jail and is responsible for the safekeeping of all [inmates] committed to [his] custody." Questionnaire Answers 8, ECF No. 15. Otherwise, Witherspoon pleads no particular facts specific to Sheriff Waybourn. *See* Compl., Am. Compl., and Questionnaire Answers, ECF Nos. 1, 7, 15. Witherspoon essentially asks the Court to find Waybourn liable only because he is the Sheriff of Tarrant County.

It is well settled that § 1983 does not "create supervisory or respondeat superior liability." *Oliver v. Scott*, 276 F.3d 736, 742 & n.6 (5th Cir. 2002); *see also Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (citations omitted) ("Under § 1983, supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability."). A supervisory official, like Waybourn, cannot be held liable pursuant to § 1983 under any theory of vicarious liability simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights. *See Alton v. Texas A & M Univ.*, 168 F.3d 196, 200 (5th Cir.1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir. 1979). Such officials may be liable when enforcement of a policy or practice results in a deprivation of a federally protected right. *Alton*, 168 F.3d at 200 (citing *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215-16 (5th Cir. 1998)). Thus, Witherspoon's claim that Waybourn is liable because he is "responsible for the safekeeping of all prisoners" fails to state a claim upon which relief may be granted.

2.    Lack of Sufficient Personal Involvement.

7

Witherspoon has filed suit against Waybourn under § 1983[5] for alleged deliberate indifference to his health and safety based on jail conditions and sufficiency of medical care. ECF Nos. 1, 7, 15. Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). It "afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Id.* To state a claim under § 1983, a plaintiff must allege facts that show that he has been deprived of a right secured by the Constitution and the laws of the United States and that the deprivation occurred under color of state law. *See Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

A claim of liability for violation of rights under § 1983, regardless of the particular constitutional theory, must be based upon allegations of personal responsibility. *See Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992) ("[A] plaintiff bringing a § 1983 action must specify the personal involvement of each defendant"); *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986) ("In order to successfully plead a cause of action in § 1983 cases, plaintiffs must enunciate a set of facts that illustrate the defendants' participation in the wrong alleged."); *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981) (A state actor may be liable under § 1983 only if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation.").

Waybourn is entitled to dismissal of any individual-capacity claims because there are no allegations that he was personally involved in any of the acts or omissions complained of in Witherspoon's pleadings. *See* ECF Nos. 1, 7, 15. A supervisory prison official such as Waybourn

---

[5] "Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

may be held liable for a § 1983 violation only if he was personally involved in the constitutional deprivation or if there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins*, 828 F.2d at 304; *see also Iqbal*, 556 U.S. at 679 ("Because vicarious liability is inapplicable to … § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Here, there are no allegations that Waybourn personally participated in the wrongs alleged in Witherspoon's pleadings, nor are there any allegations of a causal connection between Waybourn's conduct and the alleged constitutional violations. Thus, Witherspoon's claims against Waybourn in his individual capacity must also be dismissed for failing to allege sufficient personal involvement.

### 3.   Lack of Sufficient Factual Allegations of Deliberate Indifference

As this Court previously recognized, "[p]retrial detainees are entitled to basic medical care and safe conditions of confinement pursuant to the due process rights established by the Fourteenth Amendment of the Constitution." Order 8, ECF No. 21 (citing *Jacobs v. Feliciana Sheriff's Dep't*, 228 F.3d 388, 393 (5th Cir. 2000)). A conditions-of-confinement case is a constitutional attack on "general conditions, practices, rules, or restrictions of pretrial confinement." *Boyd v. Anderson*, 4:13-cv-874-O, 2013 WL 6222881, at *1 (N.D. Tex. Nov. 27, 2013) (quoting *Hare v. City of Corinth*, 74 F.3d 633, 644 (5th Cir. 1996)). A claim of episodic act or omission occurs when the "complained-of harm is a particular act or omission of one or more officials." *Id*. (quoting *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc)).

When an inmate's claims involve specific events, his claims are of an episodic act or omission. *Id.* First, the alleged deprivation must objectively be "sufficiently serious," which means the "inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Order 8, ECF No. 21 (quoting *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)). To rise to

the level of a constitutional violation, the conditions must be "'so serious as to deprive [plaintiff] of the minimal measure of life's necessities,' in this case the basic human need for sanitary living conditions." *Id.* (quoting *Alexander v. Tippah Cnty.*, 351 F.3d 626, 630 (5th Cir. 2003) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995))). Second, the inmate must show that a prison official was deliberately indifferent to inmate health or safety. *Id.* (citing *Farmer*, 511 U.S. at 847). A jail official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (citing *Farmer*, 511 U.S. at 837). Deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm. *See Hare*, 74 F.3d at 645, 649-50. "Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

Witherspoon has not made any specific allegations as to any element of deliberate indifference with respect to Waybourn. Compl., Am. Compl., Questionnaire Answers, ECF Nos. 1, 7, 15. *See, e.g., Blake v. Tanner*, 3:20-cv-1250-G-BN, 2020 WL 3260091, at *2-4 (N.D. Tex. May 20, 2020) (dismissing Dallas Jail inmate's conclusory pleadings premised on the alleged failure to follow CDC guidelines and the inmate's fear of contracting COVID-19), *report and rec. adopted*, 2020 WL 3259369 (N.D. Tex. June 16, 2020). But even reviewing Witherspoon's conclusory allegations liberally, he still has not pleaded adequate facts to support a claim of deliberate indifference. Witherspoon generally complains of a lack of compliance with "the Governors [sic] Orders, C.D.C. and Tex. Comm. on Jail Standards…," but he does not point to any specific shortcomings. Am. Compl. 8, ECF No. 7. When asked by the Court to clarify his claims as to Waybourn, Witherspoon alleged that Waybourn had not complied with the Abbot Executive Order. Questionnaire Answers 8, ECF No. 15.

10

As noted, the Abbott Executive Order does not specifically address jails or correctional facilities and allowed such facilities to continue operating as critical infrastructure. Resp. to Mot. Preliminary Inj. Exhibit 8, ECF No. 42-8. Moreover, Witherspoon has not made any specific factual allegations regarding the portions of the Abbott Executive Order with which Waybourn allegedly failed to comply. ECF Nos. 1, 7, 15. Had Witherspoon pointed to a specific failure to comply with the executive order or other governmental guidance, however, any alleged lack of compliance would not, standing alone, amount to a constitutional violation.

Executive orders offering recommendations and CDC guidelines, like other administrative guidance orders, do not themselves set a constitutional standard. *See generally Bell v. Wolfish*, 441 U.S. 520, 543 n.27 (1979) (noting a DOJ task force's recommendations "regarding conditions of confinement for pretrial detainees are not determinative of the requirements of the Constitution"); *see also Valentine v. Collier*, 978 F.3d 154, 164 (5th Cir. 2020) ("The Eighth Amendment does not enact the CDC guidelines."); *and Mays v. Dart*, 974 F.3d 810, 823 (7th Cir. 2020). Indeed, "while the recommendations of these various groups [such as a Department of Justice task force] may be instructive in certain cases, they simply do not establish the constitutional minima; rather, they establish goals recommended by the organization in question." *Mays*, 974 F.3d at 823 (quoting *Bell*, 441 U.S. at 543 n.27).

In his pleadings and the documents attached to his pleadings, Witherspoon admits the TCSO took at least the following actions:

• When he tested positive for the flu in February of 2020, Tarrant County provided medical care (through the Tarrant County Hospital District) to him to treat him for the flu, and he recovered (Questionnaire Answers 18, ECF No. 15);

• When COVID-19 became a community issue, the jail took many steps to confront COVID-19, such as:
   • Inmates were required to wear masks (Mot. Preliminary Inj. Exhibit, ECF No. 9);

• Inmates were encouraged to wash their hands and bathe (*id.*);

• Inmates were encouraged to clean their areas and were provided cleaning supplies (*id.*);

• Witherspoon was specifically advised that he had been provided A33 tablets to dissolve in water, which was a sanitizer (Compl. Grievance Resp. 20, ECF No. 7);

• He was also provided the disinfectant Bippy and was advised that it has bleach in it (*id.*);

• Inmates were encouraged to get more sleep (Mot. Preliminary Inj. Exhibit, ECF No. 9);

• When several inmates were removed from Witherspoon's pod and Witherspoon reported a fever, he was provided fever medication and vitamins (*id.*; Questionnaire Answers 18, ECF No. 15);

• Inmates were instructed to allow medical staff to conduct fever checks and to take their medicines (Mot. Preliminary Inj. Exhibit, ECF No. 9); and

• Witherspoon remained grouped with inmates he had been housed with (meaning he was not being moved or transferred among other inmates and vice versa) (Questionnaire Answers 18, ECF No. 15).

Witherspoon's acknowledgment of these many responsive and remedial actions throughout his pleadings and attachments negates his allegation that he was subjected to deliberate indifference.

While Witherspoon asserts that the TCSO's efforts to combat the spread of COVID-19 (via sanitary and health practices) are inadequate, Witherspoon's belief as to what measures should have been taken does not mean the lack of such efforts amounted to deliberate indifference. *See Halladene v. Decker*, 20 Civ. 2883 (GBD), 2020 WL 5210995, at *4 (S.D.N.Y. Sept. 1, 2020) ("[D]issatisfaction with [respondent county jail officials'] actions and his current conditions do not automatically transform those efforts into deliberate indifference. Despite Petitioner's objection and concerns, [respondent jail officials] are engaged in ongoing efforts to protect Petitioner and minimize the spread of Covid-19."); *see generally Tallmore v. Hebert*, Civ. Action No. 07-1220, 2008 WL 2597939, at *3 (W.D. La. May 28, 2008) ("There is simply no

constitutional requirement that any specific type of disinfectant be used by prison officials."); *and Ellis v. Crowe*, Civ. Action No. 09-3061, 2010 WL 724158, at *16 (E.D. La. Feb. 19, 2010) (rejecting a prisoner's claim that the cleaning supplies provided were not "the right stuff").  Sheriff Waybourn was entitled to rely on the judgment of jail medical professionals. *See Nelson v. Griffin*, 5:16-cv-00049-RWS, 2017 WL 2274252, at *4 (E.D. Tex. May 25, 2017) (as warden and health services director were not doctors, they were entitled to rely on the judgment of jail medical professionals) (citing *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (warden and medical administrator lacked medical expertise and could not be liable for diagnostic decisions of the medical staff)) (other citations omitted).

Also, it has long been settled that an inmate's personal "disagreement with medical treatment does not state a claim" of indifference to serious medical needs. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001). Inmates are not entitled to the "best" medical treatment available. *See McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978) (rejecting the claim by plaintiff that the applicable legal standard required him to receive the "optimum" or "best" medical treatment). Indeed, even negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986). In sum, having failed to plead any facts of deliberate indifference, Witherspoon's claims based on particular episodic acts or omissions in the provision of medical care must also be dismissed under Rule 12(b)(6).

### 4.    Failure to State a Claim Based on Conditions of Confinement

To the extent the Court alternatively reviews Witherspoon's claims as asserting a conditions-of-confinement claim against Waybourn, that claim must also be dismissed. Under the Due Process Clause of the Fourteenth Amendment, conditions of confinement which amount to

"punishment" of a pretrial detainee are unconstitutional. *See Duvall v. Dallas Cnty.*, 631 F.3d 203, 207 (5th Cir. 2011) (citing *Bell*, 441 U.S. at 539). To establish municipal liability on a conditions-of-confinement claim, a pretrial detainee must show: (1) a condition of confinement; (2) not reasonably related to a legitimate governmental objective; (3) which caused a violation of the detainee's constitutional rights. *See Duvall*, 631 F.3d at 207.

A condition of confinement may be shown through an intentionally adopted official policy or "an unstated or de facto policy, as evidenced by a pattern of acts or omissions 'sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials, to prove an intended condition or practice.'" *See id.* (quoting *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009)) (alteration in original). Proving a pattern amounting to an intended condition or practice is a heavy burden that the Fifth Circuit has rarely found satisfied. *See Shepherd*, 591 F.3d at 452. To be actionable, a condition of confinement must be more than a *de minimis* violation. *See Duvall*, 631 F.3d at 208. The *de minimus* exception is a "significant threshold to liability." *Id.* Accordingly, the Fifth Circuit has held:

> [I]solated examples of illness, injury, or even death, standing alone, cannot prove that conditions of confinement are constitutionally inadequate. Nor can the incidence of diseases or infections, standing alone, imply unconstitutional confinement conditions, since any densely populated residence may be subject to outbreaks. Allegations of insufficient funding are similarly unavailing. Rather, a detainee challenging jail conditions must demonstrate a pervasive pattern of serious deficiencies in providing for his basic human needs.

*Shepherd*, 591 F.3d at 454. On the second element, the reasonable-relationship test is employed in place of the objective deliberate indifference standard used in episodic acts or omissions cases; however, these tests are functionally equivalent. *See Duvall*, 631 F.3d at 209 (citing *Scott*, 114 F.3d at 54). A condition of confinement lacks a reasonable relationship to a legitimate

governmental objective if it is "arbitrary or purposeless." *See Shepherd*, 591 F.3d at 454 (quoting *Bell*, 441 U.S. at 539).

Here, Witherspoon has not stated a claim under any element of a conditions-of-confinement claim. Witherspoon's allegation that some persons within the Tarrant County Jail have contracted COVID-19, in and of itself, does not state a claim of deliberate indifference. *See Valentine*, 956 F.3d at 801. Witherspoon has not pleaded a policy to deny medical care to inmates or to wholly ignore specific COVID-19 guidelines for use in correctional facilities. ECF Nos. 1, 7, 15. Nor has Witherspoon pleaded a pervasive pattern of serious deficiencies in providing for the needs of Tarrant County Jail inmates. *Id.*; *see Shepherd*, 591 F.3d at 454. Rather, he has provided documents to this Court demonstrating (1) that inmates' medical needs, including his own, are being met, and (2) that Waybourn and the TCSO are actively taking precautionary measures in response to COVID-19.

Therefore, regardless of his allegations attempting to link his complaints about cleaning supplies to fear of contracting COVID-19, Witherspoon has not alleged the sort of "deprivation of facilities for elementary sanitation" that gives rise to unconstitutional confinement. *See Daigre v. Maggio*, 719 F.2d 1310, 1312 (5th Cir. 1983). Accordingly, any conditions-of-confinement claim must also be dismissed.

5.   Dismissal of Official Capacity Claims

The Court also addresses whether Witherspoon has asserted a claim against Waybourn in his official capacity. Questionnaire Answers 9, ECF No. 15. When a government employee is sued in his or her official capacity, the employing entity is the real party in interest for the suit.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (explaining that official-capacity suits generally

15

represent only another way of pleading an action against an entity of which an officer is an agent and are "treated as a suit against the entity") (citations omitted). As a result, any claim against Waybourn in his official capacity is construed as a claim against Tarrant County.

It is well established that a municipality or local government entity cannot be held vicariously liable under a theory of respondeat superior for the wrongdoing of municipal employees. *See Monell v. Dep't of Soc. Serv. of New York,* 436 U.S.658, 691 (1978). Liability against a government entity is available under § 1983 only for acts that are "directly attributable to it 'through some official action or imprimatur.'" *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). Thus, a plaintiff who seek to impose liability on a local government under § 1983 must prove that action pursuant to official municipal policy caused his or her injury. *Monell*, 436 U.S. at 694-95. There must be an affirmative link between the policy and the constitutional violation alleged. *City of Okla. City v. Tuttle*, 471 U.S. 808, 823 (1985).

Proof of a single incident of unconstitutional activity is not sufficient to impose liability, unless proof of the incident includes proof that it was caused by an existing, unconstitutional policy, which policy can be attributed to a municipal policymaker. *Id.* at 823-24. If the policy itself is not unconstitutional, considerably more proof than a single incident will be necessary to establish both the requisite fault and the causal connection between the policy and the constitutional deprivation. *Id.* at 824. To state a claim, a civil rights plaintiff must allege, at a minimum, facts identifying the following essential elements: (1) an official policymaker; (2) an official policy; and (3) a violation of constitutional rights whose moving force is the policy at issue. *See Piotrowski*, 237 F.3d at 578.

Here, Witherspoon has not pleaded sufficient allegations to state a plausible claim for relief of an official policy or custom, promulgated by a policymaker, or a violation of a constitution right whose moving force was the policy or custom. *See id.* Witherspoon's allegation that he was housed with inmates who may have been exposed to COVID-19 does not allege a municipal custom or policy to violate the rights of pretrial detainees. *See generally Hall v. Kenney*, 20-cv-3724, 2020 WL 5407860, at *2 (E.D. Penn. Sept. 9, 2020) (dismissing municipal jail inmate's claims about being housed for a short time in an intake pod and exposed to coronavirus against municipal officials in an official capacity as "not [alleging] a municipal custom or policy to violate the rights of pretrial detainees.") Thus, similarly, Witherspoon's official-capacity claim must be dismissed.

In sum, the Court finds that Witherspoon has not sufficiently stated a claim against Waybourn upon which relief may be granted in that he has failed to: (1) allege sufficient personal involvement; (2) show that Waybourn is liable under any theory of vicarious liability or respondeat superior; (3) allege sufficient facts of deliberate indifference to his serious medical needs or to support a claim of unconstitutional conditions of confinement; and (4) state facts sufficient to support any claim against Waybourn in his official capacity. Therefore, Waybourn's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) must be granted.[6]

### III.   PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

---

[6] As a result, the Court does not reach Waybourn's additional grounds for relief including the defense of qualified immunity. Mot. Dismiss. 24-25, 27-33, ECF No. 37. In connection with his assertion of qualified immunity, Waybourn filed a motion to stay discovery after Witherspoon submitted a request for production and inspection of documents. Request for Production, ECF No. 34; Mot. to Stay Discovery, ECF No. 43. Because the Court has resolved Waybourn's 12(b)(6) motion on the basis of failure to state claims upon which relief may be granted without reaching qualified immunity, the motion to stay discovery (ECF No. 43) is **DENIED** as moot.

The Court will address Witherspoon's claim to be released as a part of resolving the preliminary injunction motion, *infra*.

### A.        Witherspoon's Claims

As noted above, the Court allowed service of Plaintiff's motion for preliminary injunction (ECF No. 9) upon Waybourn, and Waybourn has filed a response with an extensive appendix. ECF Nos. 41, 42-1 through 42-22. In the motion for preliminary injunction, Witherspoon claims ongoing "deliberate indifference of not adhering to the nuances set in place as proactive and preventive measures in containing and controlling the spread of Covid-19." Mot. Preliminary Inj. 1, ECF No. 9. He seeks for the Court to "issue an order enjoining and restraining . . . Bill Waybourn . . . during the pendency of this action, from [his] current conduct in not providing proactive and preventive measures to reduce exposure and the spread of Covid-19. Currently, disinfectant for sanitation, P.P.E.'s and testing are not to the level ordered." *Id.* As to the relief sought by Witherspoon, he contends that the Court should issue an injunction ordering his release from confinement. *Id.* at 6.

### B.        Law Applicable to the Grant of a Preliminary Injunction

The Court may issue a preliminary injunction only if the movant establishes the following: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm absent an injunction; (3) the balance of hardships weighs in the movant's favor; and (4) the issuance of the preliminary injunction will not disserve the public interest. *Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 582 (5th Cir. 2013) (citing *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009)). "A preliminary injunction is an extraordinary remedy." *Miss. Power & Light Co. v. United Gas Pipe Line*, 760 F.2d 618, 621 (5th Cir. 1985). The movant must make a clear showing that the injunction is warranted, and the issuance of a preliminary injunction "is to be treated as the exception rather than the rule." *Id.* A preliminary injunction will only be

granted if the movant carries his burden on all four requirements. *Nichols v. Alcatel USA, Inc*., 532

F.3d 364, 372 (5th Cir. 2008) (citation omitted); *Air Ctr. Helicopters, Inc. v. Starlite Invs. Ireland*

*Ltd.*, 4:18-cv-00599-O, 2018 WL 3631782, at *3 (N.D. Tex. July 30, 2018).

      The Court finds that recent decisions of the Fifth Circuit and of another court in this district

regarding whether district courts should issue injunctive relief that would require certain jail

protocols for treatment for Covid-19 (for example, forcing compliance with or beyond the CDC's

guidelines) are instructive to the analysis. *See Valentine*, 978 F.3d at 162-66; *Sanchez v. Brown*,

No. 3:20-cv-0832-E, 2020 WL 2615931, at *18-19 (N.D. Tex. May 22, 2020).

### C.    Analysis

      As explained above, the Court has reviewed and now granted Waybourn's separately-filed

motion to dismiss all remaining claims in this proceeding. The Court had previously dismissed

Witherspoon's claims for relief underOSHA and its implementing regulations, all claims for relief

under Texas Codes and the Texas Administrative Code, and all claims against the other defendants,

namely, Williams, Andress, Ervin and Renner. Order 1-15, ECF No. 21. As such, because the

Court has resolved all claims in this case, on that ground alone, Witherspoon cannot show a

likelihood of success on the merits of his claims.

      Alternatively, Witherspoon's motion for preliminary injunction must be denied because he

has not carried, and cannot meet, his burden at the preliminary injunction stage. *See Daniels Health*

*Scis., LLC*, 710 F.3d at 582. Without even reaching the lack-of-exhaustion issue, Witherspoon

cannot meet his burden of showing a substantial likelihood of success on his claim that he was

subjected to deliberate indifference.

      1.    <u>No Deliberate Indifference to Support Claims on the Merits</u>

19

Waybourn's response to the motion for preliminary injunction, and the evidence provided in support, demonstrate that, far from showing any deliberate indifference, Waybourn and the TCSO staff have implemented numerous policies, procedures, and protocols in response to Covid-19. Waybourn Resp. 9-22, ECF No. 41. Those actions are listed in detail in the Waybourn's response and are highlighted here. Waybourn has provided proof of the TCSO having taken the following kinds of measures, beginning as early as February 28, 2020:

(1)  Preparation and planning;

(2)  Education and Training of Staff;

(3)  Initial Reduction of the Jail Population;

(4)  Limiting Outside Persons from Visiting Inside the Jail;

(5)  Signage and Inmate Education;

(6)  Education about Limiting Movement in the Jail;

(7)  Screening of All Persons Entering the Jail;

(8)  Use of Negative Airflow Cells for Inmates contracting Covid-19;

(9)  Use of Quarantine Pods and Social Distancing Measures;

(10) PPE Availability and Mandatory Mask Usage;

(11) Use of Disposable Food Trays;

(12) Limited Movement of Inmates;

(13) Hand Soap, Body Soap, and Hygiene Measures;

(14) Provision of Cleaning Supplies;

(15) Provision of Other Necessary Supplies;

(16) Use of Virtual Court Appearances;

(17) Attorney Access Permitted in Separate Areas;

(18) Limitation on Movement/Changes in Staffing;

(19) Intake Protocols to include Pre-Screening;

(20) Use of Classification Pods;

(21) John Peter Smith ("JPS") Implementation of a Covid-19 Action Plan;

(22) Additional Medical Services made Available;

(23) Isolation of Symptomatic Inmates and Quarantine of Remaining Inmates;

(24) Treatment of Symptomatic Inmates;

(25) Testing Administered under Tarrant County Public Health Criteria;

(26) Mass Testing of All Jail Inmates and Staff; and

(27) Release of Some Covid-19 Positive Inmates.

Waybourn Resp. 9-22 and Exhibits thereto, ECF Nos. 41, and 42-1 through 42-22. This extensive information and record evidence provided by Waybourn show that the TCSO has responded to the Covid-19 pandemic with extensive measures to protect the inmates, staff, and public from exposure to Covid-19. In light of this record, the Court finds that Witherspoon cannot show that he was subjected to deliberate indifference to support an underlying claim of a constitutional violation. Thus, for these additional reasons, Witherspoon cannot show a likelihood of success.

2.     <u>Recent Cases Support Denial of Injunctive Relief</u>

The Court also notes that recent case law guides this Court's review. In *Valentine*, 978 F.3d 154, after an 18-day trial involving the conditions of confinement for prisoners confined in the TDCJ Wallace Pack Unit (a unit for geriatric, medically compromised, and mobility-impaired inmates), the district court issued a permanent injunction forcing the TDCJ to develop a more

21

stringent plan to combat COVID-19. *Id.* at 159-60. Finding that the inmates' Eighth Amendment deliberate indifference to conditions-of-confinement claim was likely to fail on the merits, the Fifth Circuit subsequently stayed enforcement of that injunction pending appeal. *Id.* at 162-66.[7]

Among other things, the Fifth Circuit observed that the positive cases had dropped from 172 (as of June 23-25) to 4 (as of September 28) and that the TDCJ had implemented many CDC guided protocols to manage COVID-19. *Id.* at 158, 163-64. The Fifth Circuit stated "that [t]he Eighth Amendment does not enact the CDC guidelines[,]" and "does not mandate perfect implementation." *Id.* at 164-65. Failure to eradicate COVID-19 did not evince deliberate indifference. *Id.* Looking at all of the COVID-19 precautionary measures the TDCJ had enacted, the Fifth Circuit determined that prison officials—and not a district court—were better suited to implement COVID-19 protocols. *Id.*

Applying the analysis in *Valentine* to this case shows that Witherspoon will not succeed. The evidence summarized above demonstrates that Waybourn acted in an objectively reasonable manner to manage the COVID-19 crisis in the Tarrant County Jail. Waybourn reported that as of May 5, Tarrant County housed 89 confirmed positive inmates, and JPS managed their care. Waybourn Resp., Eckert Affidavit Exhibit 9, ECF No. 42-2. By September 26, however, that number fell to 2 inmates. *Id.* As of October 17, the number was 13. Waybourn Resp., Tarrant

---

[7] Although *Valentine* is an Eighth Amendment case concerning claims asserted by TDCJ prisoners, because the deliberate indifference standards of review are the same for pretrial detainees, the Court finds the Fifth Circuit's analysis and consideration of the motion for preliminary injunction in the *Valentine* case helpful. *See generally Baughman v. Hickman*, 935 F.3d 302, 306 (5th Cir. 2019) ("the Fourteenth Amendment case law concerning pretrial detainees [is based] on the Supreme Court's Eighth Amendment precedent concerning prisoners."); *Cadena v. El Paso Cnty.*, 946 F.3d 717, 727 (5th Cir. 2020) (noting that "[t]he standard is the same as that for a prisoner under the Eighth Amendment").

Covid 19 Exhibit 94, ECF No. 42-22.

This summary review of the evidence presented by Waybourn demonstrates that, by implementing CDC-guidelines when feasible, as well as following JPS and public health guidance on COVID-19, Waybourn cannot be said to have acted with deliberate indifference to Plaintiff while he was housed in the Tarrant County Jail. Thus, the Court rejects Witherspoon's request to decree additional COVID-19 protocols in the Tarrant County Jail. *See generally Valentine*, 978 F.3d at 165; *see also Lewis v. Casey*, 518 U.S. 343, 363 (1996) (Thomas, J., concurring) ("The Constitution charges federal judges with deciding cases and controversies, not with running state prisons."); *Marlowe v. LeBlanc*, 810 F. App'x, 302, 305 (5th Cir. Apr. 27, 2020) (staying COVID-19 control injunction, stating, *inter alia*, "[A] federal court lacks jurisdiction to sit as a super-state executive by ordering a state entity to comply with its own law"); *see also Sanchez*, 2020 WL 2615931, at * 18 (denying motion for preliminary injunction of a group of Dallas County Jail inmates challenging the Covid-19 conditions in the Dallas County Jail and noting "[t]he job of this Court is not to make law, but to interpret it.")

3.     Release is not Warranted

Witherspoon cannot succeed on his request for release from custody for several reasons. This suit seeks relief under § 1983, but a claim for release from confinement is appropriately sought in a habeas corpus action. S*ee Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973) ("Congress has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement, and that specific determination must override the terms of § 1983.")  Moreover, Waybourn reports that Witherspoon is being held on a blue warrant (for a parole violation) involving a violent crime, in addition to awaiting trial on three new

charges. Waybourn Resp., Exhibits 1and 2 (Eckert Affidavit ¶¶ 61-62), ECF Nos. 42-1 and 42-2. Under guidance from *Sanchez*, this Court declines Plaintiff's request that he be released from jail and allowed back into the community, where the public could be further endangered. *See Sanchez*, 2020 WL 2615931, at \*19 (refusing mass release order via preliminary injunction).

In summary, because review of the record and applicable law confirms that Witherspoon has not shown any likelihood of success on the merits of his claims, his motion for preliminary injunction must be denied without further consideration of the other three factors. *See Mannatech, Inc., v. Wellness Quest, LLC*, No. 3:14-cv-2497-K, 2014 WL 11515729, at \* 2 (N.D. Tex. Nov. 4, 2014) ("[b]ecause the party seeking preliminary injunctive relief must persuade the court on all four factors, the court need not address the remaining three factors") (citing *Shah v. Univ. of TX Southwestern Med. Sch.*, No. 3:13-cv-4834-D, 2014 WL 42105964, at \*4 (N.D. Tex. Aug. 21, 2014) (internal citations  omitted)).

## IV.    ANCILLARY MOTIONS

Witherspoon filed several motions while the case has been pending, many before Waybourn appeared in the case. First, although the Court previously denied a motion for appointment of counsel, Witherspoon has filed a motion to reconsider. ECF No. 49. For the reasons already stated in the prior order denying Witherspoon's motion for appointment of counsel (ECF No. 8), the Court finds that the motion to reconsider must be denied.

Witherspoon filed two separate motions for appointment of a private investigator to which Waybourn filed a response. ECF Nos. 32, 36, and 39. As noted by Waybourn, Witherspoon has not shown any legal basis for appointment of an investigator, and as such, Witherspoon's motions for appointment of an investigator must be denied.

Next, Witherspoon filed a motion under Federal Rule of Civil Procedure 35 for the Court to order that an unidentified JPS physician examine Witherspoon. ECF No. 33. As noted by Waybourn in his response to the motion for physician examination, Rule 35 does not allow an inmate plaintiff to move for his own examination at government expense. For this reason, and for the other reasons set forth in Waybourn's response to the motion (ECF No. 44), the Court finds that the motion for physical examination must be denied.

Witherspoon has also filed a "Motion for Relief," claiming the he is being denied access to the courts and seeking an order to compel Waybourn or the TCSO to provide greater access to courts. Mot. Relief 1-5, ECF No. 40. Waybourn filed a response with an appendix. Resp. to Mot. Relief 1-11, ECF No. 46; Appendix ECF Nos. 47, 47-1, 47-2, 47-3. As noted in the response, Witherspoon has not actually pleaded an underlying claim of denial of access to courts in this case, he has not argued or demonstrated an actual injury to his right of access to courts, and he has not shown that he is entitled to mandamus or other relief to compel Waybourn to take any action. For these reasons, the Court finds that Witherspoon's "Motion for Relief" must be denied.

## V.    CONCLUSION and ORDER

It is therefore **ORDERED** that Plaintiff Witherspoon's motion for preliminary injunction (ECF No. 9) is **DENIED**.

 It is further **ORDERED** that the following motions are **DENIED**: motions for appointment of a private investigator (ECF Nos. 32, 36); motion for physical examination of Plaintiff (ECF No. 33); motion for relief (ECF No. 40); and the motion for reconsideration of the denial of appointment of counsel (ECF No. 49).

It is further **ORDERED** that Sheriff Bill Waybourn's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) (ECF No. 37) is **GRANTED**, such that all Plaintiff Witherspoon's remaining claims against Sheriff Bill Waybourn are **DISMISSED WITH PREJUDICE**.

**SO ORDERED** this **19th day** of **March, 2021.**

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**